J-S45010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLEN BYRD | : | |
| | : | |
| Appellant | : | No. 461 EDA 2020 |

Appeal from the PCRA Order Entered January 29, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0503561-2001,
CP-51-CR-0503571-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLEN BYRD | : | |
| | : | |
| Appellant | : | No. 462 EDA 2020 |

Appeal from the PCRA Order Entered January 29, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0503561-2001,
CP-51-CR-0503571-2001

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                   **FILED:  JANUARY 25, 2021**

Glen Byrd appeals *pro se* from the order that dismissed his second Post

Conviction Relief Act ("PCRA") petition.  Upon review, we affirm.

On direct appeal, we summarized the evidence that supported

Appellant's convictions as follows:

The following facts were established by witness testimony at trial. Patricia Kirby testified to the following events of the night of January 3, 2001. While Lawrence Guillaume and Patricia's friend, Carla, were at Patricia's apartment, Appellant banged on her door, asking to speak to Lawrence. Appellant was wearing a red-hooded sweatshirt and bright yellow ski jacket. Jamal Small appeared behind Appellant, and Lawrence stepped outside to talk to them. Patricia went inside the apartment, and then heard a noise she suspected to be gunfire. She went outside and saw a male, who was Jamal, crawling and moaning outside her door. Patricia did not see Appellant. Eventually, when the police and paramedics arrived, she went outside and saw Lawrence, who lay dead in the bushes outside her apartment.

Lavern McCall testified he knew Appellant and Jamal from the neighborhood. On the night of the incident, he saw them talking by bushes near Patricia's apartment. Lavern stated Appellant was wearing a "yellow and red jacket." Soon thereafter, Lavern saw Appellant and Jamal standing at Patricia's front door, with Lawrence inside the apartment with the door ajar. Lavern then heard four to six gunshots, and saw Appellant walk away from the apartment.[5]

---

[5] At trial, Lavern stated a fourth man, Nate, was present at Patricia's door. Lavern testified that after the gunshots, Nate left the house and walked away quickly. The Commonwealth then introduced a statement Lavern had given police the day after the shooting, in which Lavern did not mention any additional person at Patricia's apartment just prior to the gunshots.

Leslie Rollins testified she was Lawrence's girlfriend, and lived diagonally across the street from Patricia. She had known Appellant since he was young. Leslie stated she was at home on the night of the incident. Around 11:30 p.m., she heard gunshots. After two to three seconds, Leslie looked out her window and saw Appellant, wearing a yellow jacket with a red hood, run on Patricia's side of the street.

Lawrence was shot four times in his arms and once in his back, and was pronounced dead at the scene. Jamal suffered one gunshot wound in his chest and an abrasion on his forehead as a result of falling after being shot. He was transported to the

hospital, where he was subsequently pronounced dead. The causes of death of both men were gunshot wounds. Police recovered a gun from the scene, which did not have Appellant's fingerprints on it.

*Commonwealth v. Byrd*, 894 A.2d 815 (Pa.Super. 2005) (unpublished memorandum at 1-3) (citations omitted). A ballistic investigation determined that the .09 millimeter Taurus firearm recovered from the scene was fully loaded and that neither victim had been shot by bullets fired from it. *See* N.T. Jury Trial, 3/31/04, at 179, 183. A firearm recovered from inside Leslie Rollins' home also did not fire the recovered bullets. *Id*. at 183. While there were insufficient characteristic microscopic markings in the recovered bullets to conclusively determine if the victims were shot by the same firearm, the width of the lands and grooves on the projectiles were similar. Additionally, all of the recovered bullets were determined to be either .38 or .357 caliber, except for the most-damaged projectile which was recovered from Lawrence's chest and was determined to be either a .38 or .09 caliber bullet. *Id*. at 182-83.

In October 2002, a jury trial against Appellant in connection with these events commenced. However, the trial court declared a mistrial after the jury deadlocked. In March 2004, Appellant proceeded to a second jury trial at which Jerome Small, the brother of Jamal, testified in addition to the above witnesses. *See* N.T. Jury Trial, 4/1/04, at 84-97. Specifically, Jerome testified that Appellant told Jerome that Jamal and Lawrence had struggled over control of Jamal's gun on the night in question and Appellant claimed that he

- 3 -

ultimately shot Lawrence. *Id*. at 86-87. However, Jerome testified that Appellant was adamant that he did not shoot Jamal. *Id*. at 87. Jerome also testified that Appellant also told him that Jamal was carrying a .09 millimeter Taurus gun that night, which is the same type of weapon recovered from the scene of the killings. *Id*. at 87; *see also* N.T. Jury Trial 3/31/04, at 156, 178-79.

On April 5, 2004, the jury convicted Appellant of two counts of first-degree murder, carrying a firearm without a license, and possession of an instrument of crime. On May 19, 2004, the jury declined to impose the death penalty and the trial court imposed two consecutive terms of life imprisonment. Appellant filed a post-sentence motion which was denied. On direct appeal, Appellant challenged the sufficiency of the evidence, the weight of the evidence, and the admissibility of Jerome Small's statement. *Id*. This Court affirmed Appellant's judgment of sentence and our Supreme Court denied his subsequent petition for allowance of appeal. *Id*., *appeal denied*, 903 A.2d 536 (Pa. 2006).

Appellant filed a timely first PCRA petition asserting, *inter alia*, that trial counsel provided ineffective assistance by advising Appellant not to testify on his own behalf. After issuing proper notice under Pa.R.Crim.P. 907, the PCRA court dismissed Appellant's petition. This Court affirmed the PCRA court's dismissal order, and our Supreme Court denied Appellant's petition for

allowance of appeal. **Commonwealth v. Byrd**, 986 A.2d 1249 (Pa.Super. 2009) (unpublished memorandum), *appeal denied*, 992 A.2d 123 (Pa. 2010).

On August 23, 2012, Appellant filed his second *pro se* PCRA petition, invoking the United States Supreme Court's decision in **Miller v. Alabama**, 567 U.S. 460, 465 (2012) (holding that mandatory sentences of life without parole "for those under the age of 18 at the time of their crime violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'"). On July 30, 2015, Appellant filed a supplemental *pro se* PCRA petition alleging after-discovered evidence in the form of witness recantation testimony by Jerome Small. Appellant attached a written statement signed by Jerome, wherein he indicated that Appellant never confessed involvement in the shooting and that Jerome lied at trial after his mother pressured him to make sure that Appellant did not "walk." **See** Supplemental PCRA Petition, 7/30/15, at Exhibit A. Jerome further specified that he was in a halfway house at the time of the incident, never spoke with Appellant, and knew nothing about what happened. **Id**.

In 2017, the Honorable Tracy Brandeis-Roman issued Rule 907 notice of intent to dismiss Appellant's second PCRA petition, finding that Appellant had not shown the necessary due diligence to overcome the PCRA's stringent time bar. Appellant filed a response disagreeing with Judge Brandeis-Roman's due diligence finding, but no further action occurred for approximately two

years. In 2019, the case was reassigned to the initial trial judge,[1] who requested a response from the Commonwealth to Appellant's petition. After receiving the Commonwealth's answer, the PCRA court issued a second Rule 907 notice, reiterating the reasoning from the previous notice. Again, Appellant filed a response contesting the PCRA court's due diligence finding. On January 18, 2020, the PCRA court dismissed the petition by order and opinion. This timely appeal followed.[2] Both Appellant and the PCRA court complied with the mandates of Pa.R.A.P. 1925, and thus, this appeal is ready for our disposition.

_____

[1] In its opinion, the PCRA court explained the significant delays in the progress of Appellant's second PCRA petition as a breakdown in the court system whereby Appellant's petition was mistakenly assigned to the "PCRA unit" and placed onto the "in house docket." **See** PCRA Court Opinion, 1/13/20, at 2 n.1. This led to the assignment of a different judge, the Honorable Tracy Brandeis-Roman, who issued the initial Rule 907 notice, but took no other definitive or substantive action. **Id**. The original trial judge, who eventually assumed purview as the PCRA court, was not notified of the existence of this PCRA until July 23, 2019, when he received an email from the scheduling coordinator of the PCRA unit, providing him with the petitions and apologizing for the "undue delays." **Id**. at Exhibit A.

[2] Appellant filed two separate notices of appeal, one at each docket number. However, the notices each listed both docket numbers, which ran afoul of this Court's interpretation of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) in **Commonwealth v. Creese**, 216 A.3d 1142 (Pa.Super. 2019) (holding that **Walker** requires quashal of notices of appeal that contain more than one trial court docket number). However, in **Commonwealth v. Johnson**, 236 A.3d 1141 (Pa.Super. 2020) (*en banc*), we expressly overruled **Creese**, holding that as long as an appellant files a separate notice of appeal at each trial court docket, the fact that each notice of appeal lists multiple docket numbers is of "no consequence." **Id**. at 1148. Accordingly, the fact that Appellant listed two docket numbers does not require us to quash his appeals.

Appellant raises the following issue for our review: "The PCRA Court erred in failing to grant relief on [A]ppellant's after[-]discovered recantation evidence." Appellant's brief at 2.

We begin with the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." **Id**. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." **Id**.

Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment [of sentence] becomes final[.]" 42 Pa.C.S. § 9545(b)(1). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9543(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may

not address the merits of the issues raised if the PCRA petition was not timely filed. *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017).

The time bar can "only be overcome by satisfaction of one of the three statutory exceptions codified at 42 Pa.C.S. § 9545(b)(1)(i)-(iii)." *Id*. The three narrow exceptions to the one-year time bar are as follows: "(1) interference by governmental officials in the presentation of the claim; (2) newly-discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231, 233-34 (Pa.Super. 2012). Additionally, a PCRA petitioner must present his claim within sixty days of the date the claim first could have been presented.[3] 42 Pa.C.S. § 9545(b)(2).

The timeliness exception set forth at § 9545(b)(1)(ii) has two components, both of which must be alleged and proven as an initial jurisdictional threshold. *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015). Namely, the petitioner must establish that (1) the facts upon which the claim was predicated were unknown; and (2) they could not have been ascertained by the exercise of due diligence. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests and explain

---

[3] As of December 24, 2018, 42 Pa.C.S. § 9545(b)(2) was amended to provide that any PCRA petition invoking a timeliness exception must be filed within one year of the date the claim first could have been presented. However, this amendment does not apply to Appellant's case, which arose before the effective date of the amendment.

why he could not thereby have learned the new facts earlier. ***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa.Super. 2010).

Once it is established that the PCRA court has jurisdiction over the claim, the petitioner can present a substantive after-discovered evidence claim. ***See*** 42 Pa.C.S. § 9543(a)(2)(vi). In order to obtain relief on a substantive after-discovered evidence claim, a petitioner must demonstrate that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. ***Commonwealth v. Washington***, 927 A.2d 586 (Pa. 2007). The substantive merits-based analysis is more demanding than the analysis required by the "new fact" exception to establish jurisdiction. ***See Bennett***, ***supra*** at 1264.

Turning to the specifics of the case *sub judice*, Appellant challenges the PCRA court's review of the record when it dismissed his petition based upon witness recantation evidence on the grounds that Appellant failed to meet all of the prongs of a substantive after-discovered evidence claim.[4] ***See*** Appellant's brief at 3.

---

[4] Appellant does not contest the PCRA court's dismissal of his cruel-and-unusual-punishment claim, jurisdiction over which was premised upon the after-recognized constitutional right exception to the PCRA's time bar.

We note the following. Despite its reasoning for issuing the Rule 907 notices, the PCRA court failed to conduct a timeliness analysis in its Pa.R.A.P. 1925(a) opinion before addressing Appellant's substantive claim. Since it bypassed the timeliness analysis and proceeded directly to rendering a credibility determination regarding Jerome Small's recantation affidavit, we shall assume the PCRA court found that the newly-discovered fact exception necessary to establish jurisdiction was met. The record supports such a finding.[5] Accordingly, we conclude that PCRA court had jurisdiction to reach the merits of Appellant's petition.

The PCRA court explained its reasoning for denying Appellant's substantive after-discovered evidence claim, as follows:

> Jerome Small's recantation attached to [Appellant's] petition is scant, his justification for lying at trial is weak, and his newly-found "truth" has no indicia of reliability.[5] Recantation evidence is "inherently and notoriously unreliable" evidence upon which a court might grant a new trial.[6]
>
> _____
>
> [5] Both the recantation and [Appellant's] petition are highly suspect. Small claims he was forced into his previously false testimony by his mother and the Assistant District Attorney.

_____

[5] Specifically, Appellant alleged in his supplemental PCRA petition that he encountered Jerome Small for the first time, on June 18, 2015, following his transfer to SCI Huntington. *See* Supplemental PCRA petition, 7/30/15, at 5. After Jerome Small approached him in the SCI Huntington chapel, Appellant learned that Jerome Small had lied when he testified at Appellant's trial. *Id*. Appellant filed his supplemental PCRA petition raising this issue within sixty days of their conversation. *Id*. In the petition, Appellant explained that he could not have uncovered the recantation sooner because Appellant and Jerome Small were not previously housed together, he did not know anyone who knew Jerome Small, and he had no way of knowing that Jerome Small would recant his trial testimony. *Id*.

Moreover, by [Appellant's] own admission, Jerome Small's recantation came after [Appellant's] transfer to the same correctional institution as Mr. Small. Finally, Jerome Small's recantation occurred after he was convicted of homicide in an unrelated case and was incarcerated, thereby eliminating any real consequences for his "recantation."

[6] *See Commonwealth v. McNeil*, 487 A.2d 802, 807 n.4 (Pa. 1985).

The evidence against [Appellant] was sufficient for a jury to reach a conclusion without the testimony of Jerome Small. The jury was permitted to give credence to any, all, or none of Jerome Small's testimony at trial. The jury heard eyewitness testimony, ballistics evidence, and an alleged admission by [Appellant] as evidence of [Appellant's] guilt. In light of the overwhelming and compelling aforementioned other evidence, there is no reason to suggest Jerome Small's recantation, which would only be used for impeachment purposes, would lead to a different verdict at trial.

PCRA Court Opinion, 2/13/20, at 3-4.

Thus, the PCRA court was not persuaded that Jerome Small's recantation statement was credible, characterizing it as "scant," "weak," and lacking any "indicia of reliability." *Id*. Additionally, viewing the affidavit in the context of the larger record, where Jerome Small's testimony was but a small piece of the overall evidence of Appellant's guilt, the PCRA court found that Jerome Small's recantation would not have changed the outcome of the case. *Id*. at 4. We agree.

As the PCRA court recognized, our Supreme Court has repeatedly "acknowledged the limitations inherent in recantation testimony, which has been characterized as 'extremely unreliable.'" *Commonwealth v. Small*, 189 A.3d 961, 977 (Pa. 2018) (citing *Commonwealth v. Williams*, 732 A.2d

- 11 -

1167, 1180 (Pa. 1999)); *see also Commonwealth v. Mostellar*, 284 A.2d 786, 788 (Pa. 1971) ("There is no less reliable form of proof, especially where it involves an admission of perjury."). When addressing the credibility and significance of recantation evidence, "the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." *Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa. 2004) (citing *Commonwealth v. Dennis*, 715 A.2d 404, 416 (Pa. 1998)).

In assessing the reliability of the recantation evidence, the PCRA court does not need to hold a hearing, so long as it can effectively and independently assess the credibility of the recantation statement in light of the trial record as a whole without additional testimony. *Commonwealth v. Washington*, 927 A.2d 586, 597 (Pa. 2007) (denying remand for PCRA hearing where PCRA court assessed credibility of recantation and its significance in light of the trial record and found it was not persuasive evidence). *But see Commonwealth v. Williams*, 732 A.2d 1167, 1180-81 (Pa. 1999) (remanding for a PCRA hearing where the PCRA court adopted the Commonwealth's argument wholesale, failing to make an independent determination as to the believability of the recanting person).[6] Unless the PCRA court is satisfied that the recantation is true, it should deny a new trial. *Small*, *supra* at 977.

---

[6] Appellant has not requested a remand for an evidentiary hearing or argued that the PCRA court erred by not holding one in this instance.

Further,

An appellate court may not interfere with the [PCRA court's decision regarding] a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. Additionally, the deference normally due to the findings of the PCRA court is accentuated where what is involved is recantation testimony. It [is] within the exclusive province of the PCRA court to determine the credibility [of] recantation.

*Commonwealth v. Medina*, 92 A.3d 1210, 1219 (Pa.Super. 2014) (cleaned up).

Although the PCRA court did not hold an evidentiary hearing, it did closely scrutinize Jerome Small's sworn recantation statement and made its own independent credibility determinations in light of the evidence as a whole. The PCRA court found that the timing of the recantation, when Jerome had nothing to lose in contradicting his prior statement, rendered its reliability suspect from the outset. Specifically, the recantation came fifteen years later and only after Jerome had been separately convicted of second-degree murder, sentenced to serve life in prison without the possibility of parole, had exhausted his appeals, and had been placed in the same prison as Appellant. These circumstances combined with the ballistic and witness evidence corroboration of Jerome's original trial testimony, led the PCRA court to reach the conclusion that the recantation was incredible. We discern no clear abuse of discretion in this credibility determination.

Additionally, the PCRA court found that no relief was due since the outcome of trial would not have changed even without Jerome's testimony.

- 13 -

The certified record supports the PCRA court's conclusion. As detailed above, at trial, Patricia Kirby testified that Appellant and Jamal Small knocked at her door to speak with Lawrence Guilliame. Lawrence Guilliame went outside with them, where two eye-witnesses viewed the men talking from different angles. Patricia also heard them talking, followed by gunshots. *See* N.T. Jury Trial 3/31/04, at 75-78, 81, 87, 89. When she went outside, Appellant was gone, Jamal was dying, and Lawrence was dead. *Id*. Both men sustained gunshot wounds to vital parts of their bodies.

Two other witnesses, Leslie Rollins and Lavern McCall, saw Appellant flee the scene of the shooting. *Id*. at 100-02, 121-24, 127-28, 163; N.T. Jury Trial, 4/1/04, at 39-40, 42, 61-62, 64. Leslie Rollins testified that Appellant had one hand in his pocket, one arm outstretched in a balancing maneuver, and looked back over his shoulder as he ran from the area. N.T. Jury Trial 3/31/04, at 122. All three individuals had known Appellant for many years and were confident in their pre-arrest identifications. N.T. Jury Trial, 3/31/04, at 93-94, 131, N.T. Jury Trial, 4/1/04, at 66, 116. Further, their independent descriptions of Appellant's yellow jacket and red hoodie were consistent. *Id*.

The ballistic evidence also pointed towards Appellant's guilt. A fully-loaded firearm was found lying in between the two victims. It did not match the bullets recovered from the victims or the crime scene. A second firearm discovered inside Patricia Kirby's home also did not match any of the fired ammunition. Both men were shot by a firearm with similar characteristics

that was never recovered. Appellant, the sole survivor of the incident, was seen fleeing the scene with his hand in his pocket. Appellant's decision to flee from the scene and abscond from authorities for months further evidenced his guilt. *See Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa.Super. 2019) (noting that flight tends to establish consciousness of guilt). Therefore, the circumstantial evidence strongly connected Appellant to the missing firearm and the shooting deaths of Lawrence and Jamal, even without Jerome's testimony.

Based on the certified record detailed above, we find that the PCRA court did not commit a clear abuse of discretion when it found the sworn recantation statement incredible and that Appellant's guilt could be inferred from the totality of the circumstances, even without Jerome Small's testimony. Thus, we discern no abuse of discretion in the PCRA court's denial of this claim for relief. Accordingly, we affirm the PCRA court's order dismissing the PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/21

- 15 -